Argued October 7, reversed December 22, 1965

In the Matter of the Estate of
MERLE MALCOLM CRAWFORD, Deceased
CRAWFORD v. KARR
409 P. 2d 330

*Glenn D. Ramirez,* Klamath Falls, argued the cause and filed a brief for appellant.

No appearance was made or brief filed for the respondent.

Before McAllister, Chief Justice, and Perry, Denecke, Lusk and Schwab, Justices.

PERRY, J.

Merle Malcolm Crawford died on December 1, 1961. On December 2, 1963, his sister Rosetta Betty Karr, the defendant herein, filed a petition for letters of administration of his estate, and on that same date letters of administration of his estate were issued to her. On December 5, 1963, Vivian Sisson Crawford (hereinafter referred to as petitioner) filed her petition for an order revoking the letters of administration previously issued to the defendant and requested appointment of herself on the basis that she was the widow of the deceased.

A hearing was held and the trial court entered an order denying the petition on the basis that petitioner was not the widow of the deceased because no legally recognizable marriage was ever entered into between the petitioner and the deceased. From the order of the trial court the petitioner has appealed.

The record discloses that petitioner was a quarter-blood Cherokee Indian and not a member of any Klamath Reservation tribe. The deceased was of Scotch-Irish and Indian descent and a member of a Klamath tribe. The petitioner and deceased had known each other from childhood, both having been raised on the Klamath Reservation. In February 1933, the parties, being in love, agreed to live together as husband and wife in the home of petitioner's mother, which home was located upon the Klamath Reservation. Thereafter they lived together and held themselves out to the general public and to the members of the tribe as man and wife, with the exception that when deceased was inducted into military service in 1941, where he served two months, he represented himself as being single. One child, Leon, was born to this couple, who predeceased his father.

In December 1944 Congress passed an act which provided as follows:

"Sec. 2. Bona fide Indian custom marriages with members of said tribes mentioned in section 1 [Klamath or Modoc or Yahooskin Band of Snake Indians] existing prior to the effective date of section 1 of this Act are valid, and recordation of such marriage with the superintendent of the Klamath Indian Agency, if both parties are then living, in a book kept by him for that purpose shall be prima facie evidence of such marriage. The nonrecordation of such a marriage shall be prima facie evidence of the nonexistence of such marriage.

"Sec. 3. From and after the date of the approval of this Act, divorces in which a member of the said tribes or band of Indians is a party shall be effected only by decree of a State court of competent jurisdiction." 58 Stat 800 (1944)

On the 22nd day of May, 1945, Merle Malcolm Crawford and petitioner each executed affidavits to the effect that they had orally agreed to become man and wife and had considered themselves to be man and wife since September 1933. These affidavits were delivered to the superintendent of the Klamath Agency who caused the marriage to be recorded in a book kept by him for that purpose.

In November 1960, the deceased and petitioner as husband and wife executed a deed to real property to Klamath Agency, Inc., an Oregon corporation.

The trial court found "that the decedent did not comply with any tribal customs previously recognized by the Klamath Tribe of Indians as constituting a marriage ceremony." And further, that OCLA 23-1010, which was in force in 1933, prohibited marriage between "any person having more than one-half Indian blood" with any white person; the trial court finding

that petitioner "must be taken as being a white person" and deceased an Indian of "more than one-half" blood.

■ The statue to which the trial court referred, § 23-1010, OCLA, was repealed by Oregon Laws 1951, ch 455, § 2. ORS 106.210, enacted in 1955 and 1959, validated any marriage which was prohibited by such statute but was in all other respects legal and regular. Therefore, the marriage was not prohibited by any anti-miscegenation statute.

On the question of whether or not this was an Indian custom marriage, the testimony is somewhat confused.

Wade Crawford, a brother of deceased, testified that he heard "they had ceremonies, and when a young man proposed * * * why they went to visit * * * her parents, and then if they approved of him * * * they would give him some little gift. He would take a gift and they in turn would give him a gift and that indicated that * * * the girl's parents would approve of him going with the girl. * * * they had a regular marriage ceremony and they had the preacher or the head men of their tribe, and married together and they had a big feast and danced and so on and that was the ceremony they went through."

On the other hand, there was testimony that the parties simply agreed to be husband and wife and then lived together, holding themselves out as married.

■ The prima facie showing of marriage established by the recordation made pursuant to 58 Stat 800 (1944) has not been overcome.

The judgment is reversed for further proceedings not inconsistent with this opinion.